UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Jeffrey J. Rusthoven, | Court File No.:07-3154-JRT-JJK |
| Plaintiff, | |
| v. | **PLANTIFF'S RESPONSE MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| TCF NATIONAL BANK, | |
| Defendant. | |
| | Oral Argument Requested |

---

Plaintiff Jeffrey J. Rusthoven ("Rusthoven") submits this Memorandum of Law in opposition to Defendant's Motion for Summary Judgment.

## I. INTRODUCTION

This lawsuit arises from Defendant TCF National Bank's ("TCF") allowing monies of Rusthoven to be removed without his knowledge or consent by a third party from Rusthoven's TCF Checking and Savings Account between the period of January 25, 2006 to August 1, 2006. Rusthoven believes that the third party allowed by TCF to engage in these unauthorized transaction was Muzit Kubrom ("Kubrom"), his former finance.

On December 19, 2005, Rusthoven opened a checking and savings account with TCF, Rusthoven specifically did not attach his savings account to his checking account. A total of $27,785.08 was withdrawn from Rusthoven's checking account and another $32,236.50 was transferred from Rusthoven's saving account to his checking account.

-1-

Rusthoven discovered these authorized transactions and notified TCF on August 3, 2006 and filed a police report on August 4, 2006. See Exhibit 7.  TCF's Motion for Summary Judgment should be dismissed.

## II. STATEMENT OF ISSUES

Plaintiff respectfully requests that the Court review the following issues:

1. **IS A THIRD PARTY WHO USES AN ATM CARD TO REMOVE MONIES FROM AN ACCOUNT OF A PERSON WITHOUT THE EXPRESS OR IMPLIED AUTHORIZATION, CONSENT OR KNOWLEDGE OF THE OWNER OF THAT CARD AND ACCOUNTS STILL AUTHORIZED TO REMOVE MONIES FROM THAT ACCOUNT?**

2. **WAS RUSTHOVEN'S NOTIFICATION TO TCF OF THE UNAUTHORIZED TRANSMISSIONS TO KUBROM, MORE THAN 60 DAYS AFTER THE FIRST UNAUTHORIZED TRANSACTION WAS DISCOVERED "REASONABLE" UNDER THE CIRCUMSTANCES ACCORDING TO 15 U.S.C § 1693G(A) AND 12 C.F.R § 205.6 (B)(3) ?**

3. **WAS TCF'S ALLOWING KUBROM TO TRANSFER MONIES FROM RUSTHOVEN'S SAVINGS ACCOUNT TO HIS CHECKING ACCOUNT AND GIVING HER NEW ATM CARDS TO ACCESS RUSTHOVEN'S CHECKING ACCOUNT NEGLIGENCE?**

   **TCF's motion for Summary Judgment should be dismissed.**

### III.  THE RECORD

As continued from Defendant'' exhibits, the documents that supplement the record on which this motion is made consist of the following:

Exhibit 7: Saint Paul Police Report regarding theft of money from Plaintiffs accounts, attached to Declaration of Jeff Rusthoven;

Exhibit 8: Saint Paul Police Report regarding use of Rusthoven's account by an unknown male in Saint Paul, MN at an Oasis Market on September 22, 2008.

### IV. STATEMENT OF THE MATERIAL FACTS

In their memoranda of law, Defendant presents numerous statements of fact, that although interesting to read are not relevant to Rusthoven's claim or TCF's underlying liability.  The criminal and substance abuse history of Rusthoven, although sad, do not have any bearing on these proceedings other than as it relates to the time line.  The material facts as pertaining to this particular motion, however, are as follows:

On December 19, 2005, Rusthoven opened a savings and checking account at TCF bank by signing TCF's account agreement. *See*, Plaintiff's Account Agreement attached as Exhibit 9 to Declaration of Jonathan Hoglund, Defendants Brief,  *See* also Declaration of Plaintiff Jeff Rusthoven.  At the time he opened those accounts he also obtained an ATM Card that was attached only to his checking account. *Id.* Rusthoven intentionally did not allow access to his savings account form his ATM Card; he did this because he wanted to create a "firewall" between his checking and saving accounts so that if he lost his card no one could access his savings account. *Id.*

Rusthoven was arrested on January 30, 2006 in a Wendy's parking lot at 1:00 a.m. with his ex-finance Kubrom *See*, St. Paul Police record attached as Exhibit 7 to the Kaess Declaration and Declaration of Jeff Rusthoven.  After his arrest he was taken to Ramsey County Jail to await a hearing and was held approximately one and a half to two weeks.  At his hearing, Rusthoven was ordered to serve six months in Lino Lakes Prison and was released on August 2, 2006.  *See*, Declaration of Jeff Rusthoven.  When Rusthoven was arrested at the Wendy's parking lot he left his wallet and other personal items along with his ATM card in his vehicle.  *Id*.  He did so because he did not want them to get "lost" down at the station. *Id*.  It is believed that Kubrom made arrangements to transport Rustohoven's personal articles to his home.  *See*, Declaration of Jeff Rusthoven.  At no time did Rusthoven give consent to any third party, including Kubrom to access any of his accounts with TCF Bank. *Id*.

Beginning almost immediately after Rusthoven was arrested, it is believed Kubrom began making unauthorized ATM withdrawals from his checking account, and eventually making unauthorized transfers from his savings to the checking account.[1]  This despite the fact that Rusthoven never shared with Kubrom any information that should have been necessary to transfer money from his savings to his checking account. *Id*.

---

[1] Although both parties assume that it was Muzit Kubrom that was the third party who misappropriated funds from Rustohoven's account, the fact is neither party can say with a reasonable amount of certainty who misappropriated these funds.  On September 22, 2006 an unknown male attempted to use a check from Rustohoven's closed TCF account to pay for merchandise in Saint Paul, Mn.  All that can be said with a reasonable amount of certainty is that the Plaintiff's money is gone, he does not have it, and he believes it was Muzit Kubrom who took the money.  *See* Rusthoven Declaration and Exhibits.

Rusthoven was unaware of these transactions until after he was released from Lino Lakes Prison on August 2, 2006, at which point he notified TCF bank of the misappropriated funds the next day, August 3, 2006. *See*, Declaration of Jeff Rusthoven. He also filed a Police Report with August 4, 2006 on and notified TCF of the filing of the police report. *Id*.

## VI. BURDEN OF PROOF

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. *Ludwig v. Anderson*, 54 F.3d 465, 470 (8th Cir. 1995). The non-moving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

A non-moving party's response to a summary judgment motion, however, may be treated as a cross-motion for summary judgment. *See Acton v. City of Columbia, Mo.*, 436 F.3d 969, 975 n.5 (8th Cir. 2006). "A district court maintains the discretion to grant a non-moving party summary judgment, even where the non-movant does not file a cross-motion for summary judgment." *Id.* "An interlocutory summary judgment may be

rendered on the issue of liability alone, even if there is a genuine issue as to the amount of damages." Fed.R.Civ.P. 56(d)(2).

Furthermore, **15 U.S.C § 1693g(b)** specifically states that:

> In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized or, if the electronic fund transfer was unauthorized, **then the burden of proof is upon the financial institution to establish that the conditions of liability set forth in subsection (a)** of this section have been met, and, if the transfer was initiated after the effective date of section 1693c of this title, that the disclosures required to be made to the consumer under section 1693c(a)(1) and (2) of this title were in fact made in accordance with such section. **[emphasis added].**

## VII. ARGUMENT

1. **IS A THIRD PARTY WHO USES AN ATM CARD TO REMOVE MONIES FROM AN ACCOUNT OF A PERSON WITHOUT THE EXPRESS OR IMPLIED AUTHORIZATION, CONSENT OR KNOWLEDGE OF THE OWNER OF THE CARD AND ACCOUNTS STILL AUTHORIZED TO REMOVE MONIES FROM THAT ACCOUNT.**

Despite Defendant TCF's assertions to the contrary, it is clear from the record that Rusthoven did not authorize any transaction from Kubrom or any other third party from the moment he was arrested until he was released on August 2, 2006. Pursuant to 15 U.S.C § 1693g(b) it is clear that the burden of proof is specifically on the Plaintiff to not only show that no genuine issue of material fact exists, but to show that the electronic fund transfer(s) in question were authorized by Rusthoven.

15 U.S.C § 1693 et. seq., commonly known as the Electronic Fund Transfer Act (hereinafter "EFTA") establish the framework for the basic rights and responsibilities between a consumer and a financial institution as it relates to Electronic Fund Transfers.  15 U.S.C 1693 a (11) define an unauthorized electronic fund transfer as:

> (11) the term "unauthorized electronic fund transfer" means an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit, but the term does not include any electronic fund transfer (A) initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer, unless the consumer has notified the financial institution involved that transfers by such other person are no longer authorized, (B) initiated with fraudulent intent by the consumer or any person acting in concert with the consumer, or
> (C) which constitutes an error committed by a financial institution.

15 U.S.C 1693 a (11); 12 C.F.R 205.2(m)

Thus, to be an authorized transaction, the consumer had to specifically furnish the "card, code, or other means of access to such consumer's account."  In this particular case it is clear that Rusthoven did not furnish the "card, code, or other means of access to such consumer's accounts." Although it is Rusthoven's theory that it was Kubrom who misappropriated money from both his checking and saving account, he is by no means certain.  *See* Declaration of Jeff

-7-

Rusthoven. If Rusthoven's and TCF's theory is correct, then Kubrom stole both Rusthoven's ATM and the PIN number from his truck when he was arrested. [2]

Neither the EFTA nor Regulation E interpret the meaning of when a consumer "furnished" the "card, code, or other access to such consumer's account"-and there is no case law that has interpreted the meaning of "furnish" pursuant to EFTA or Regulation E. However, it is clear in this particular instance it would be difficult to interpret that Rusthoven "furnished" his card and code to Kurbrom to access his accounts. **The simple fact is that TCF has failed to show any affirmative steps taken by Rusthoven that in any way could be construed as authorization Kubrom or any other third-party to access his checking and savings accounts held with TCF Bank.**

Although, The Federal Reserve Board has never defined what the word "furnish" means, they did define what an "unauthorized electronic fund transfer" is as it relates to a unique situation such as a robbery:

> An authorized EFT includes a transfer initiation by a person who obtained the access device from the consumer through fraud or robbery.

12 C.F.R Part 205, Appendix C, section 2(m).

---

[2] Additionally, although it is clear that Rusthoven did not *furnish* an ATM card or PIN to Kubrom or any other third party, and it is not clear who actually did-it is clear that TCF **furnished** an ATM card and presumably a PIN number to access Rusthoven's consumer accounts to someone other than Rusthoven. In his letter to Mr. Rusthoven denying his claim Mr. Hoglund states that one of the reasons for denying Rusthoven's claim is that "additional cards were ordered which only Rusthoven could have accomplished." Considering that Rusthoven was sitting in a prison cell, and by the Defendant's own admission "did not contact TCF" how those cards were ordered and who they went to is somewhat of a mystery.

It is clear from the fact presented here that Rusthoven was robbed, [3] Based on the available evidence, Kubrom stole Rushoven's ATM card and PIN, however, TCF has not demonstrated that Rusthoven furnished either the card or PIN to Kubrom. Thus, TCF's motion for summary judgment should be denied.

2. **WAS RUSTHOVEN'S NOTIFICATION TO TCF OF THE UNAUTHORIZED TRANSMISSIONS TO KUBROM, MORE THAN 60 DAYS AFTER THE FIRST UNAUTHORIZED TRANSACTION WAS DISCOVERED "REASONABLE" UNDER THE CIRCUMSTANCES ACCORDING TO 15 U.S.C § 1693G(A) AND 12 C.F.R § 205.6 (B)(3)?**

15 U.S.C §1693 g(a) provides in part

> Notwithstanding the foregoing, reimbursement need not be made to the consumer for losses the financial institution establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of the statement (or in extenuating circumstances such as extended travel or hospitalization, within a reasonable time under the circumstances) any unauthorized electronic fund transfer or account error which appears on the periodic statement provided to the consumer under section 1693d of this title. In addition, reimbursement need not be made to the consumer for losses which the financial institution establishes would not have occurred but for the failure of the consumer to report any loss or theft of a card or other means of access within two business days after the consumer learns of the loss or theft **(or in extenuating circumstances such as extended travel or hospitalization, within a longer period which is reasonable under the circumstances)**, but the consumer's liability under this subsection in any such case may not exceed a total of

---

[3] TCF in footnote 1 claims that if this matter goes to trial they will argue that both Kubrom and Rusthoven engaged in a fanciful complicated attempt, worthy of a Hollywood script, to defraud TCF, that was predicated on Rusthoven getting himself arrested and spending six months in jail.

-9-

> $500, or the amount of unauthorized electronic fund transfers which occur following the close of two business days (or such longer period) after the consumer learns of the loss or theft but prior to notice to the financial institution under this subsection, whichever is less.

15 U.S.C § 1693 g(a)(2) (emphasis added.)

Rusthoven first learned of the unauthorized transactions on August 3, 2006, one day after he was released from prison. He had no access to his mail, had no contact with TCF and had no reason to fear for the safety of his monies. He specifically created a "firewall" between his checking and saving accounts and believed that it was not possible for anyone other than himself personally to access his saving accounts. *See* Declaration of Jeff Rusthoven. In his limited dealing with TCF, all transactions from his savings to his checking account had to be done in person. *Id*.

It is clear that Rusthoven had no contact with TCF and was unaware of the fact of the unauthorized transactions, as such it is a ***reasonable*** to conclude that Rustohoven's incarceration was an **extenuating circumstance** that should toll the 60 day cut off and allow the Plaintiff to present his case that all transactions were unauthorized.

3. **WAS TCF'S ALLOWING KUBROM TO TRANSFER MONIES FROM RUSTHOVEN'S SAVINGS ACCOUNT TO HIS CHECKING ACCOUNT AND GIVING HER NEW ATM CARDS TO ACCESS RUSTHOVEN'S CHECKING ACCOUNT NEGLIGENCE?**

Simply put, when TCF bank entered into a contract with Rusthoven they established a duty of care to safeguard Rusthovens money. Failure to safeguard that money would constitute a breach of a duty of care to Rusthoven, by allowing

Kubrom (or some other third –party) to transfer monies from Rustohoven's savings to his checking account, contrary to his specific intent when he created the "firewall" between those accounts, TCF breached that duty of care to Rusthoven.

Additionally, TCF furnishing new ATM Cards to Kubrom (or some other third party) without the knowledge, consent or authorization of Rusthoven, while Rusthoven was sitting in Lino Lakes prison constitutes a second breech of that duty of care.

Both of those actions breeched the duty of care owed by TCF to Rusthoven.  As such TCF's motion to for summary judgment on Rustohoven's negligence claim should be denied.

## VIII. CONCLUSION

In sum, Rusthoven did not "furnish" his ATM card or the PIN to any third party including Kubrom   Questions of material fact remain that preclude summary judgment as a matter of law.  Thus, Defendants' Motion for Summary Judgment should be denied because questions of fact remain that can only be determined by a jury,

                Respectfully submitted,

                **TUPA & KAESS, P.A.**

Dated: December 1, 2008      /s Ryan L. Kaess
                Ryan L. Kaess
                106 West Water Street
                Saint Paul, MN 55107

651-204-0963
RyanKaess@Kaesslaw.com
***Attorneys for Plaintiff Jeffrey Rusthoven***

-12-