UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| JEFFREY J. RUSTHOVEN, | Civil No. 07-3154 (JRT/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| TCF NATIONAL BANK, | |
| Defendant. | |

Ryan L. Kaess, **KAESS AND ASSOCIATES**, 106 West Water Street, Fourth Floor, St. Paul, MN 55107; Brendan R. Tupa, **ENTREPRENEURS & FREE MARKETS, PLC**, 701 Fourth Avenue South, Suite 500, Minneapolis, MN 55415, for plaintiff.

William F. Mohrman, **MOHRMAN & KAARDAL**, 33 South Sixth Street, Suite 4100, Minneapolis, MN 55402, for defendant.

Plaintiff Jeffrey Rusthoven had savings and checking accounts with defendant TCF National Bank ("TCF"). In 2006, while Rusthoven was in jail after a parole violation, $27,785.08 was withdrawn from his checking account. Rusthoven then filed this action against TCF alleging violations of the Electronic Fund Transfer Act ("EFTA"), *see* 15 U.S.C. § 1693, and common law negligence. TCF now moves for summary judgment. For the reasons given below, the Court grants TCF's motion in part and denies it in part.

## BACKGROUND

On December 19, 2005, Rusthoven opened checking and savings accounts at TCF. Rusthoven received an ATM card that allowed him to withdraw funds from his checking account. Rusthoven kept the PIN number for his ATM card in his wallet. (*See* Mohrman Decl., Docket No. 22, Ex. 3, at 87.)

On January 30, 2006, police encountered Rusthoven and his fiancé, Muzit Kubrom, in Rusthoven's truck in a restaurant parking lot. A warrant had been issued for Rusthoven's arrest following an alleged parole violation, and Rusthoven was arrested. (*See* Mohrman Decl., Docket No. 22, Ex. 4.)

Rusthoven testified that before the police arrived, his wallet was in the center console of his truck. (*See* Mohrman Decl., Docket No. 22, Ex. 3, at 65.) Specifically, he states: "When I got arrested my wallet – I always took my wallet out – when I like to drive it throws your back out – in the center console . . ." (*Id*.) Rusthoven indicated that after the police arrested him, they asked him if he "want[ed] anything," and also asked if it was okay for Kubrom to drive his truck home. (*Id*.) Rusthoven agreed for Kubrom to drive his truck home in order to avoid having it towed, but adds that he did not tell Kubrom anything about what he intended her to do with his wallet or any other personal items remaining in the truck. (*Id*., at 65-67.)

Between the date of Rusthoven's arrest and his release from prison on August 2, 2006, $27,785.08 was withdrawn from his checking account, and sums were also transferred from his savings account to his checking account. Rusthoven alleges that he was unaware of this activity until his release, and he contacted TCF the next day to notify

it that these withdrawals and transfers were unauthorized. Rusthoven also filed a police report indicating that he believed Kubrom was responsible for the disputed account activities.

Rusthoven filed this action on June 28, 2007, alleging that TCF's conduct in failing to prevent this apparent theft violates the EFTA and constitutes common law negligence. TCF now moves for summary judgment.

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II. EFTA (COUNT 1)

#### A. "Furnishing" Account Access

The purpose of the EFTA is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15

U.S.C. § 1693(b).  The Act's "primary objective," however, "is the provision of individual consumer rights."  *Id*.  As relevant here, the Act limits a consumer's liability for "unauthorized electronic fund transfers" to the lesser of (1) $50, or (2) the amount of money obtained through the unauthorized transfers prior to the date when "the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected."  15 U.S.C. § 1693g(a).  In actions where a consumer's liability is disputed, "the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized."  15 U.S.C. § 1693g(b).

> The EFTA defines "unauthorized electronic fund transfer" as
>
> an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit, but the term does not include any electronic fund transfer (A) **initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer**, unless the consumer has notified the financial institution involved that transfers by such other person are no longer authorized, (B) initiated with fraudulent intent by the consumer or any person acting in concert with the consumer, or (C) which constitutes an error committed by a financial institution.

15 U.S.C. § 1693(a)(11) (emphasis added).  TCF argues that the transfers of money from Rusthoven's account were not "unauthorized electronic fund transfers," because Rusthoven effectively "furnished" Kubrom with access to his account when he gave her control over his truck and its contents on the night of his arrest.  Thus, TCF argues, Rusthoven's EFTA claim must be dismissed.  The Court disagrees.

As an initial matter, Rusthoven clearly testified that he was the owner of the truck

in question, and that Kubrom had never driven it before the night of the arrest. (Mohrman Decl., Docket No. 22, Ex. 3, at 56-57.) In explaining why he allowed Kubrom to drive the car that night, Rusthoven stated that an officer "asked me if [Kubrom] could drive [the truck] home, and the decision was yes. I rather that truck be home than in the impound lot." (Mohrman Decl., Docket No. 22, Ex. 3, at 66.) In short, there are no indications in the record that Rusthoven intended, or indicated, that Kubrom's control over his vehicle would continue beyond her drive to his home. In addition, Rusthoven clearly testified that he never gave Kubrom permission to use or remove any personal items in the truck. When asked if he told her what he wanted her to do with those items, Rusthoven simply replied that he "[n]ever had a chance." (*Id*.) Finally, and in the Court's view most importantly, Rusthoven testified that when he was arrested, the wallet was "in the center console." (*Id*., at 65.) While the parties agreed at the hearing that the specific contours of this console are not clear from the record, consoles in many vehicles latch shut, and the Court assumes for the purposes of summary judgment that this container closed in such a manner.

In sum, taking the facts in the light most favorable to Rusthoven, in order for Kubrom to access Rusthoven's ATM card and pin number, she would have had to open a closed container and take the ATM card and pin number from his wallet, in circumstances where she had mere temporary authority to drive the vehicle home, and no authority to remove or use any personal items. In other words, Kubrom would have had to **steal** the ATM card and pin number. While TCF may well successfully challenge this version of events at trial, this Court simply cannot conclude that it constitutes the

"furnishing" of an individual's account information as a matter of law. To reach that conclusion here, the Court would have to interpret the EFTA to limit the liability of a financial institution in cases of theft, a reading which finds no support in the statutory text quoted above and is rejected in the Code of Federal Regulations. *See* 12 C.F.R. pt. 205, supp. I, section 2(m)(3) ("An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery."). Accordingly, TCF's motion for summary judgment is denied to the extent that it seeks judgment on Rusthoven's EFTA claim.[1]

### B. Sixty-Day Notice

TCF also argues that its liability should be limited under an EFTA provision that outlines the responsibilities of consumers to report unauthorized account activity. Under 15 U.S.C. § 1693g(a), "reimbursement need not be made to the consumer for losses the financial institution establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of the statement (**or in extenuating circumstances such as extended travel or hospitalization, within a reasonable time under the circumstances**) any unauthorized electronic fund transfer or account error which appears on the periodic statement provided to the consumer." (Emphasis added.) TCF argues that this provision should limit its liability here, because a portion of

---

[1] The Court adds that although Rusthoven indicates that he **believes** it was Kubrom who misappropriated the money, he indicated in his deposition that he is not certain. (*See* Mohrman Decl., Docket No. 22, Ex. 3, at 64-65.) This uncertainty renders summary judgment premature as well, for if Kubrom was not the one who used the card, then TCF has no argument that Rusthoven furnished his account information to the person who initiated the unauthorized transfers.

Rusthoven's losses occurred more than sixty days after TCF first listed the disputed transfers in Rusthoven's account statements. Rusthoven responds that he did not receive account statements while he was in prison, and that his imprisonment should qualify as an "extenuating circumstance" under § 1693g(a).

The Court agrees that in the circumstances presented here, the EFTA's sixty-day notice must limit the scope of Rusthoven's claim. As TCF explains, Rusthoven's account agreement required him to notify TCF of any changes in his mailing address. (*See* Hoglund Decl, Docket No. 20, Ex. 9, at 14.) While this certainly is a more difficult proposition for someone who is incarcerated, TCF has submitted guidelines from the Minnesota Department of Corrections that indicate that Rusthoven could have arranged to receive his mail in prison. (Mohrman Reply Decl., Docket No. 30, Ex. 1.) In those circumstances, the Court concludes that Rusthoven's imprisonment – though certainly a significant challenge for someone trying to manage their finances – did not create the level of difficulty associated with either health concerns serious enough to require hospitalization, or extended travel that may make it impractical to continue to receive mail. The EFTA provided Rusthoven with sixty days to resume monitoring his account statements after his arrest, and in a case where Rusthoven was undisputedly able to re-route his mail to the place where he was incarcerated, that time period struck a reasonable balance between the responsibilities of banks and consumers in identifying and reporting fraud. Accordingly, the Court grants TCF's motion for summary judgment to the extent that it seeks to limit Rusthoven's recovery to losses incurred within sixty days of when TCF first transmitted an account statement listing one of the disputed transfers.

### C. Treble Damages

The EFTA also includes a provision allowing the plaintiff to seek treble damages if a financial institution (1) fails to comply with certain investigation requirements before declining to provisionally credit the consumer with the disputed funds, or (2) otherwise acts unreasonably in determining whether account charges were in error. *See* 15 U.S.C. § 1693f(e). TCF argues that there is insufficient evidence to support either conclusion in this case, because Rusthoven did not report the unauthorized transfers soon enough to trigger the EFTA's investigation and provisional credit requirements,[2] and because, in any event, it performed a thorough and reasonable investigation of the disputed charges. Rusthoven has not responded to this argument, and has not otherwise challenged the quality of TCF's investigation. In the absence of any argument from Rusthoven, or any other indications in the record that TCF failed to respond reasonably to this case's subtle factual background, this Court agrees that Rusthoven's request for treble damages must be dismissed.

## II. NEGLIGENCE (COUNT 2)

Under Minnesota law, the elements of a negligence claim are "(1) duty; (2) breach of that duty; (3) that the breach of duty be the proximate cause of plaintiff's injury; (4) that plaintiff did in fact suffer injury." *Schweich v. Ziegler, Inc.*, 463 N.W.2d 722,

---

[2] This argument is based on 15 U.S.C. § 1693(a), which lists certain requirements that apply when a consumer points to an error within sixty days of the transmittal of the disputed statement. In light of Rusthoven's failure to challenge TCF's investigation, this Court need not conclusively address the impact of that sixty-day deadline in this case.

729 (Minn. 1990).  Rusthoven argues that TCF was negligent in two ways.  (*See* Pl.'s Resp., Docket No. 24, at 10-11.)  First, he argues that TCF was negligent in allowing a third-party to transfer money from his savings account to his checking account.  Second, he argues that TCF negligently furnished new ATM cards to a third party while he was in prison.

As to Rusthoven's first claim, as TCF explains, Rusthoven has not offered evidence of any kind seeking to demonstrate the standard of care applicable to TCF's handling of account transfer requests.  Indeed, in his deposition, Rusthoven admitted that he has no knowledge of standard banking practices outside of his own experiences, and no understanding of the applicable standard of care.  (Mohrman Reply Decl., Docket No. 22, Ex. 3, at 93.)  In a case focused on this type of specific, technology-laden practice within the heavily regulated banking industry, Rusthoven's broad, conclusory allegations of negligence are insufficient for this claim to go forward.  *See Halla v. Nw. Bank Minn., N.A.*, 601 N.W.2d 449, 453 (Minn. Ct. App. 1999) (rejecting a claim that a bank failed to exercise ordinary care in its implementation of a check-endorsement policy where the plaintiff relied on nothing more than assertions).  As to TCF's provision of new ATM cards, that allegation is plainly absent from Rusthoven's complaint.  (*See generally* Compl., Docket No. 1.)  Accordingly, Rusthoven's negligence claim is dismissed in its entirety.

This case will be placed on the Court's next available trial calendar.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that TCF's Motion for Summary Judgment [Docket No. 18] is **GRANTED in part** and **DENIED in part**:

1. The motion is **GRANTED** as follows:

    a. Rusthoven's EFTA claim is limited to losses that occurred within sixty days of when TCF transmitted an account statement listing one of the disputed transfers;

    b. Rusthoven's claim for treble damages under the EFTA is **DISMISSED**; and

    c. Rusthoven's negligence claim is **DISMISSED with prejudice**.

2. In all other respects, TCF's motion is **DENIED**.

DATED: July 20, 2009
at Minneapolis, Minnesota.

                                              s/ John R. Tunheim
                                              JOHN R. TUNHEIM
                                              United States District Judge